POTTER, ET UX. *v.* MUSICK, ET UX.

[No. 366, September Term, 1966.]

*Decided June 6, 1967.*

The cause was argued before HAMMOND, C. J., and MARBURY, OPPENHEIMER, McWILLIAMS and FINAN, JJ.

40

*Donaldson C. Cole, Jr.,* for appellants.

*J. Albert Roney, Jr.,* with whom were *Roney & Fockler* on the brief for appellees.

PER CURIAM.

In January 1965, the appellants, William Potter, age 73, and Vannie Potter, his wife, listed for sale their property containing approximately 11¼ acres near Perryville, Cecil County, with a real estate broker for the asking price of $15,500. The realtor showed the property to several prospective purchasers, and on May 11, 1965, showed the property to Arvel B. Musick, the appellee. The appellee discussed the terms of sale with appellant William Potter and on or about May 22, 1965, decided to purchase the property for the asking price. On May 28, 1965, the appellees executed the contract which had previously been executed by the appellants on May 24, 1965. The contract permitted the sellers to retain possession for sixty days. On June 26, 1965, appellant Vannie M. Potter notified the appellee, Arvel B. Musick, that the appellants did not intend to go through with the contract. Although the appellees in turn notified appellants, in writing, that they were ready, able, and willing to settle, the appellants persisted in their refusal to execute the deed. This suit for specific performance was then filed by the appellees.

At the hearing below, the appellant introduced witnesses who testified that the appellant, William Potter, was suffering from mental depression and despondency and that between the dates of May 24, 1965 to and through May 28, 1965, he was not mentally competent to have entered into a binding contract. Two of the appellants' witnesses were doctors—one a general practitioner, who was the family physician, the other a psychiatrist. The general practitioner had not seen Mr. Potter from April until June 25, 1965, and he testified that although mentally despondent he had lucid intervals. The psychiatrist testified that much of her information concerning the depressed condition of Mr. Potter came from his son and wife; that she thought his judgment was impaired; that he was confused and depressed; but, "This doesn't mean that he isn't correctly oriented." She felt that evidence of his depression and impairment of judgment was demonstrated by the fact that he put such a

low value on his property, "because even though I don't know very much about real estate, this didn't seem to me like a very good expression of judgment of the value of this property." On cross-examination, the psychiatrist, when asked whether or not Mr. Potter's conduct throughout the negotiations for the sale of his property was perfectly normal, replied: "I don't know. I wasn't there. I don't know how he acted."

> Q. Well, based on the testimony that you heard to-
> day of his conduct, would you say that it was per-
> fectly normal conduct?
> A. I couldn't judge.

Evidence showed that Mr. Potter still drove his automobile.

Mr. Potter did not testify at the hearing and the chancellor, in his memorandum opinion, stated: "I believe that I have already commented upon the alertness which seemed evident to the Court from Mr. Potter's appearance at the trial."

The appellees, the realtor, and one prospective purchaser all testified that Mr. Potter appeared mentally competent when they had visited him at his property and had conversed sensibly.

In the court below the appellants attempted to show that $15,500 was not a fair consideration for the property, but have abandoned this contention on appeal.

We are of the opinion that the finding of the chancellor that the appellants had not met the requisite burden of proof to show that Mr. Potter was mentally incompetent and thus not capable of entering into a binding contract was not clearly erroneous, Rule 886 a; and that he was correct in entering a decree for specific performance.

There is no difference in the mental capacity required for the valid execution of a contract for the sale of real property and that required for an instrument testamentary in character, Code (1957), Art. 93, § 349. The Court believes this case to be controlled by what we had to say on mental capacity in *Sachs v. Little*, 245 Md. 343, 226 A. 2d 283 (1967); *Ingalls v. Trustees*, 244 Md. 243, 223 A. 2d 778 (1966); *Arbogast, Exec. v. MacMillan*, 221 Md. 516, 158 A. 2d 97 (1960). Also, see cases collected in 5 M.L.E., *Contracts*, § 71.

*Decree affirmed, with costs.*